I. MALAGA of Iliili and TUPUA of Vaitogi, Appellants

v.

MASE MOLIOO of Vaitogi, Appellee

No. 4-1957

High Court of American Samoa

Civil Jurisdiction, Appellate Division

[Matai Name: "Lealaimatafao" of Iliili]

March 20, 1957

ARTHUR A. MORROW, *Chief Justice;* APE, *Associate Judge;* and MALEPEAI, *Associate Judge.*

OPINION AND ORDER OF AFFIRMANCE

Heard at Fagatogo on February 28, 1957 before Morrow, *Chief Justice,* and Ape and Malepeai, *Associate Judges.*

Aumoeualogo, counsel for I. Malaga.

Atofau, counsel for Tupua.

Aifili Lauvao, counsel for Mase Molioo.

MORROW, *Chief Justice*

The Trial Division of the High Court in the case of *Ioane of Nuuuli, Mase Molioo of Vaitogi, and Tupua of Vaitogi v. I. Malaga of Iliili* decreed that Mase Molioo, subject to his resignation from the title Mase, should be registered as the holder of the matai title Lealaimatafao attached to the village of Iliili. I. Malaga and Tupua appealed separately from the decree. The appeals were argued together.

■ The statute governing the powers of the Appellate Division on appeal in civil cases reads as follows: "The Appellate Division of the High Court on appeal . . . shall have power to affirm, modify, set aside, or reverse the judgment or order appealed from or reviewed and to remand the case with such directions for a new trial or for the entry of judgment as may be just. The findings of fact of the Trial and Probate Divisions of the High Court in cases tried by them shall not be set aside by the Appellate Division of that court unless clearly erroneous, but in the

519

case of appeals from the district courts the Appellate Division of the High Court may review the facts as well as the law. . ." Section 213 of par. 10 of Amendments, Nos. 11–59, 1952 to the A. S. Code. Under the statute a finding of fact by the Trial Division cannot be set aside by the Appellate Division "unless clearly erroneous."

██ Sec. 933 of the Code as amended prescribes the law which the Court must follow in making the determination as to which of the eligible opposing candidates shall be registered as the holder of a matai title. It reads as follows:

"Consideration Given by Court: In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise the male descendant shall prevail;

(b) The wish of the majority or plurality of those members of the family related by blood to the title;

(c) The forcefulness, character, personality, and capacity for leadership of the candidate;

(d) The value of the holder of the matai name to the government of American Samoa."

██ ██ Sec. 926 of the Code as amended prescribes the eligibility requirements for succession to a matai title. The trial court found that all of the four original candidates met these requirements. It was not claimed by either of the appellants that Mase did not comply with these requirements. The only provision as respects blood in Sec. 926 as amended requires that a person to be eligible "to succeed to any matai title: (a) must be at least one-half Samoan blood." All of the candidates in the case met this requirement as to Samoan blood. An examination of Sec. 933 as amended and above quoted will reveal the fact that in the trial of a matai name case the Court must consider "The wish of the majority or plurality of *those*

*members of the family related by blood* (emphasis added) to the title." This is not a requirement that the person ordered by the Court to be registered as a matai shall be related by blood to the title. It is the wish of blood members and no others that the Court must consider. Neither Sec. 926 nor Sec. 933 requires that a matai shall be a blood member of the family. Of course, the matai is usually a blood member, but this Court judicially knows that there are matais in American Samoa who are not blood members of their respective families. Such is a matter of common and general knowledge in American Samoa. "The rule may be stated broadly that generally courts will take notice of whatever matters are known, or ought to be generally known, within the limits of their jurisdiction, upon the theory that justice does not require that courts be more ignorant than the rest of mankind." 20 Am.Jur. 48. Under Samoan customs a family may consist not only of blood members, but also of married persons to the family living in it and rendering service to the matai and in addition persons who have lived in the family for a long time and are rendering such service. It was the wish of these latter two classes of family members that was excluded from consideration by the Court in awarding a matai title when Sec. 933 of the Code was amended in 1952. Prior to that time the statute provided that the Court should consider "The wish of the majority or plurality of the family." The amendment obviously did not require that the matai awarded the title be a blood member. Any change in the law to that effect would require the action of the legislative branch of the Government. The Court has no legislative power. It takes the law as it finds it.

It was claimed by both appellants that the Trial Division made an erroneous finding of fact when it found that Mase was the great grandson of Fao Tuioge and that he, therefore, had 1/8th Fao blood in his veins. The evidence

521

was conflicting on this matter. We have reviewed it, but we are unable to say that upon the evidence before the Trial Division its finding that Mase had ⅛th Fao blood in his veins was "clearly erroneous." Despite the conflict, there is ample evidence in the record to support the finding. Under these circumstances we cannot set the finding aside. The admitted fact that Fao Vave, the last holder of the title, celebrated the 50th anniversary of his succession to the title at the fale of Muli, the blood father of Mase, is very strong circumstantial evidence that Muli had Fao blood. If Muli had Fao blood then Mase has it. This was in addition to other evidence in support of Mase's pedigree which showed him to be the great grandson of Fao Tuioge.

█ Both appellants claimed upon the appeal that if the Court would grant a new trial, they would be able to introduce additional evidence to support their contention that Mase has no Fao blood in his veins. As far as appears, this evidence was available to the appellants and known to them during the trial before the Trial Division. If they did not introduce it, it was their own fault and due to their own neglect. "To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence is such as will probably change the result if a new trial is granted, that it has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching. The necessity of establishing these essential factors is repeatedly emphasized by the courts in passing upon the propriety of granting or denying new trials upon this ground." 30 Am.Jur. 165.

Appellant Tupua was in no way prejudiced by the finding that Mase was a blood member of the family because the Court at the same time found that Tupua had the better hereditary right. It found Tupua had ¼th Fao

blood while Mase had ⅛th, and that Tupua prevailed over Mase on the issue of hereditary right.

Tupua also claimed on the appeal that the lower court should have found that he prevailed over Mase on the issue of the "wish of the majority or plurality of those members of the family related by blood to the title." Suffice it to say that there was ample evidence in the record in the trial court to support its finding that there were more blood members who wished Mase to have the title Fao, than there were who wished Tupua to have it.

Tupua was a witness at the trial. His testimony was seriously weakened by the fact that he testified that his own sons-in-law, who signed his petition, were blood members of the Fao Family. Later on cross-examination he admitted they were not. Speaking with reference to his testimony the trial court in its opinion said: "Tupua testified that both Ioane (Ioane was a party in the original case but not on the appeal) and Mase were not blood-members of the Fao Family but we think his testimony is entitled to little weight since it was apparent from parts of his testimony while on the witness stand that his knowledge as to who were blood-members of the Family and who were not was quite inaccurate. For instance he testified that several who signed his petition and who were married to Fao Family members (also on his petition) were blood-members of the Family when this Court judicially knows that Samoans do not marry inside their own clan. Two sons-in-law of Tupua were on his petition but nevertheless he testified that all signers for him were blood-members of the Fao Family including these two sons-in-law. There is an old maxim in the law 'Falsus in uno, falsus in omnibus' which translated means 'False in one thing, false in everything.' If Tupua had frankly admitted in the first place instead of on cross-examination that the persons married to Fao blood-members and who signed his petition

were only married persons to the Family and not blood-members, his testimony as a whole would be entitled to much more weight than it is. Fao Vave celebrated the 50th anniversary of his mataiship at Muli's house. Muli is the blood-father of Mase. He would not have celebrated such an event at the home of a person not a blood-member of his family. We think that the weight of the evidence is to the effect that both Mase and Ioane are blood-members of the Fao Family." We think the evidence before the trial court fully warranted its conclusion as to the weight to be given to Tupua's testimony. If a witness willfully testifies falsely about one thing, he may testify falsely about other things.

We have gone over the evidence before the trial court. There was ample evidence before it to warrant its conclusion that Mase prevailed over the other candidates on the issue of the wish of the majority or plurality of those blood members of the family related by blood to the title. The Trial Division found that Mase ranked first, Tupua second, Malaga third and Ioane fourth on this issue. We cannot say that its finding on this issue was "clearly erroneous." Appellant Tupua had on his petition 31 signers from Western Samoa. He at first testified that all of them were blood members but it was very clear from his testimony on cross-examination that he did not know whether the 31 were blood members or not. There were non blood people on the petitions of the other candidates, but we think that the evidence as a whole warranted the obvious conclusion of the trial court that there were many more non blood people on Tupua's petition than there were on any of the others.

With reference to the issue of forcefulness, character, personality and capacity for leadership as respects Mase, Tupua and Malaga the Trial Division in its opinion said: "Malaga, who is 50 years old, graduated from Leulumoega school in Upolu. He speaks a little English. He is a

carpenter and worked for Public Works in that capacity for a number of years. He has built fales and has helped construct churches. He served in the Fita Fita Guard and Band for about 20 years and is now retired from the Navy. Malaga has been a lesser matai in the Fao Family for 6 years. His title is that of a talking chief. He has lived in Pago Pago for 30 years, but goes to Iliili when it is necessary for him to act as a talking chief in the Fao Family. His retirement pay from the Navy is $131.04 a month. He gets some support from two of his children— one in Hawaii, the other in the continental United States. He derives a very small amount of income from the sale of chickens.

"Mase, 47 years old, completed the 9th grade of the Marist Brothers School and was graduated therefrom. He speaks English well. He was a teacher for 18 years and as such attended numerous teachers' institutes. He was the pulenuu of Iliili for one year and clerk of District Court No. 4 for 5 years. Mase was assistant tax collector in the office of the Attorney General for 4 years. He has worked on family plantations. He holds the responsible position of Chief Copra Clerk for the Island Government. His salary with overtime amounts to over $2000 per year. His income as an individual from copra amounts to about $500 a year. Mase has a son in the Armed Forces of the United States and sisters in Honolulu, who send him money. He has been a matai for 13 years. He is the treasurer of the LMS church in his village and also treasurer of the LMS organization in his county. As Chief Copra Clerk, Mase has a number of people working under his supervision, among them candidate Tupua.

"Tupua, 55 years old, testified that he got through the second grade and up to the third grade. He speaks very little English. After quitting school he worked on family plantations. During the war he was the foreman of a gang

of stevedores unloading ships. He was the pulenuu of Vaitogi for 4 years. Tupua was at one time the policeman for his county chief and at another time policeman for District Court No. 4. He has held the Tupua title for 18 years. He works in the Copra Division under Mase carting copra, having held his present position for 3 years. Tupua has worked as a carpenter. He earns $520 a year carting copra. Tupua sells the copra from the Tupua Family lands and divides the proceeds among family members. He does not cut copra himself. The Tupua Family sold no copra this year. Tupua receives some money from his children in Honolulu." We have reviewed the evidence before the Trial Division on this issue and we believe that the foregoing from the Trial Division's opinion is fully warranted by the evidence and that the conclusion of the Trial Division that Mase ranked first on this issue, Tupua second, and Malaga third was right. When the arguments on the appeal were heard we had an opportunity to observe the personalities of Tupua, Mase and Malaga as did the Trial Division at the trial. After reviewing the evidence before the Trial Division we cannot say that its finding on this issue was "clearly erroneous." In fact we think that instead the weight of the evidence clearly supports the trial court's finding on this issue.

With reference to the issue of value of the holder of the title to the Government, the Trial Division said: "The value of the holder of a matai title to the Government depends primarily upon his ability to handle the affairs of his family well. This ability in turn depends largely upon his forcefulness, character, personality and capacity for leadership. Since we find that Mase prevails over the other candidates with respect to these matters, we believe that he is better able to handle the affairs of the Fao Family than any one of the other three candidates. Mase has also demonstrated his usefulness to the Government by

occupying the very responsible position of Chief Copra Clerk for a number of years. No other candidate had a position of comparable responsibility. As heretofore stated, Tupua works under the supervision of Mase.

"We believe from the evidence that Mase ranks first on the issue of value to the Government, Tupua second, Malaga third, and Ioane fourth, and we so find." It is clear, as stated in the opinion of the trial court, that the value of the holder of a matai title to the Government depends primarily upon his ability to handle the affairs of the family and that this in turn depends largely upon his capacity for leadership, his personality, his character and his forcefulness. In view of the evidence before the Trial Division on this issue, we think it was correct in its conclusion that Mase prevailed over appellants Tupua and Malaga on this issue.

The Trial Division concluded: "Since we have found that Mase ranks first on the second, third and fourth issues, while Tupua ranks first on the first issue only, it follows that the title Lealaimatafao of Iliili should be awarded to Mase, neither Malaga nor Ioane ranking first on any of the issues."

We think, basing our opinion upon the evidence before the Trial Division, that there is no ground for setting aside any of the Trial Division's findings of fact with respect to any of the four issues. As heretofore stated the law requires us to find that a finding of fact is "clearly erroneous" before we are at liberty to set it aside. We think that the findings of fact, including the finding that Mase has $1/8$th Fao blood, were amply sustained by the evidence before the Trial Division.

We agree with the trial court that Tupua prevailed over Mase and Malaga on the issue of hereditary right and that Mase prevailed over both Tupua and Malaga on the other three issues. Mase having prevailed over Tupua and

Malaga on the 2nd, 3rd, and 4th issues should be registered as the Lealaimatafao.

As we have said, we believe from the evidence before the Trial Division that Mase has Fao blood in his veins. However, as we have heretofore indicated, neither Sec. 926 nor Sec. 933 of the Code, as amended, requires that a matai be a blood member of the family. The only blood requirement with respect to him is that he have at least one-half Samoan blood. The law does require, however, that in considering the wish of the majority or plurality of the family the Court shall limit its consideration to the wish of blood members only. The Trial Division did that.

### ORDER

In accordance with this opinon, it is ORDERED that the decree of the Trial Division of the High Court awarding the matai name Lealaimatafao of Iliili to Mase, subject to the condition that he file with the Registrar of Titles his resignation from the title Mase within 15 days, be and the same is hereby affirmed.

Costs in the sum of $5.00 are hereby assessed against Tupua and Malaga, each to pay $2.50 within 15 days.